IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHERIE LEESE, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | **3:17-CV-00274** |
| | : | **(JUDGE MARIANI)** |
| COMMONWEALTH OF PENNSYLVANIA | : | |
| Department of Insurance | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

## I. INTRODUCTION

Defendant's Motion for Summary Judgment (Doc. 36) is pending before the Court.

With this motion, Defendant requests that the Court grant judgment in its favor and enter an

order closing the case. (Doc. 36 at 1; Doc. 36-2 at 1.)   In her single-count Complaint,

Plaintiff alleges that Defendant violated Title VII's antiretaliation provision when it retaliated

against her after she filed and settled a prior case. (Doc. 1 at 1.)  For the reasons

discussed below, the Court concludes that Defendant's motion is properly denied.

## II. STATEMENT OF UNDISPUTED FACTS[1]

Plaintiff began her employment at the Pennsylvania Department of Insurance in 1988. (Doc. 37 ¶ 1; Doc. 44 ¶ 1.) During her employment, she was subjected to sexual harassment from a male superior. (Doc. 42 ¶ 2; Doc. 47-1 ¶ 2.) She filed an internal complaint alleging sexual harassment by Ronald Gallagher, followed by a Pennsylvania Human Relations ("PHRC") complaint filed in 2013 asserting that she had been retaliated against for reporting the harassment. (Doc. 37 ¶ 2; Doc. 44 ¶ 2; see also Doc. 42 ¶ 3; Doc. 47-1 ¶ 3.) Plaintiff was not disciplined for being sexually harassed by Gallagher. (Doc. 37 ¶ 3; Doc. 44 ¶ 3.) Donna Fleischauer, the Department's Director of Human Resources at the time, investigated Plaintiff's harassment complaint, and Brad Harker, Department Counsel, was aware of the complaint and handled the matter once Plaintiff filed with the PHRC. (Doc. 42 ¶¶ 8-9; Doc. 47-1 ¶¶ 8-9.) After Plaintiff filed the 2013 PHRC charge, she and

---

[1] Defendant properly filed its Statement of Material Facts (Doc. 37) with its Motion for Summary Judgment (Doc. 36). In addition to filing a response to Defendant's statement (Doc. 44), Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Doc. 42) includes thirty-eight numbered paragraphs (id. at 5-12) she describes as "Plaintiff's factual presentation [which] has been prepared by construing the adduced factual discovery record in a light most favorable to her, the non-moving party. Inferences, doubts and issues of credibility have been resolved in her favor, at this point in time" (id. at 5 n.1) (citing Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978)). She adds "[s]hould a trial occur, Plaintiff, of course, proceeds with no such tailwind. For now though, she does." (Id.)

Defendant objects to Plaintiff's factual recitation and asks that the Court strike it. (Doc. 47 at 10.) Insofar as Defendant has responded to Plaintiff's factual presentation which is not clearly foreclosed by relevant rules (see, e.g., Doc. 53 at 2-4, the Court will include Plaintiff's factual averments where undisputed.

The parties appropriately provide citations to the record. The Court has verified citations but omits them from the recitation set out in the text.

Defendant entered into a settlement agreement. (Doc. 37 ¶ 4; Doc. 44 ¶ 4.) Harker

negotiated and drafted the settlement agreement. (Doc. 42 ¶ 11; Doc. 47-1 ¶ 11.) As part

of the settlement agreement, Plaintiff agreed to resign. (Doc. 37 ¶ 4; Doc. 44 ¶ 4; *see also*

Doc. 42 ¶ 12; Doc. 47-1 ¶ 12.) The agreement included a provision that Plaintiff not seek

employment in any agency under the Governor's jurisdiction. (Doc. 37 ¶ 5; Doc. 44 ¶ 5.)

The agreement included the following provisions:

> a. (1) . . . Leese shall not apply for, seek or accept any employment in the future with any Department, Board or Commission under the Governor's jurisdiction. Leese may seek employment with any independent state agency outside the Governor's jurisdiction, and the Department agrees that it will not interfere with any such attempts. . . .
>
> b. (3) . . . Leese further agrees that no further complaints, charges, claims, litigation, or any other type of actions will be filed or otherwise initiated or instituted against the Department and/or its current or former individual employees in any forum arising from or relating to the Department's employment of Leese. . . .
>
> c. (6) The Department shall not contest any application for unemployment compensation benefits filed by Leese.
>
> d. (7) Any documents reflecting the previous disciplinary actions imposed by the Department on Leese in her Commonwealth Official Personnel File shall be removed.
>
> e. (8) The parties understand and agree that the terms of this Settlement Agreement are confidential,[2] subject, however, to disclosure only to the extent required by applicable state or federal laws, and/or as necessary to professional tax advisors or accountants.

---

[2] Defendant notes that "[s]ince the parties had mutually agreed that the terms of the settlement agreement are confidential, the full agreement is not attached here, and the parties agreed not to contest the language in these selected excerpts disclosed through this motion." (Doc. 37 at 3 n.4.)

> f. (9) The parties agree to refrain from disparaging each other regarding any matter related to the underlying case or the [sic] Leese's employment with the Commonwealth of Pennsylvania Insurance Department. This paragraph shall apply to any business and/or job reference that the Department issues relative to Leese.

(Doc. 37 ¶ 6; *see also* Doc. 44 ¶ 6.)

There are a number of different "coding options" in the "SAP" system which is a transactional list of dates of hire, change of jobs, and separations. (Doc. 37 ¶ 7; Doc. 44 ¶ 7.) Plaintiff refers to the system as the state's electronic personnel system. (Doc. 42 ¶ 17; Doc. 47-1 ¶ 17.) The codes are used to separate an employee from the payroll system. (*Id.*) The code used for Plaintiff was "ZH-07" which indicates "voluntary resignation contact former agency." (Doc. 37 ¶ 8; Doc. 44 ¶ 8; *see also* Doc. 42 ¶ 19; Doc. 47-1 ¶ 19.) The code allowed the Department to monitor whether Plaintiff was applying with any entities within the Governor's jurisdiction. (Doc. 37 ¶ 9; Doc. 44 ¶ 9.) Other codes could have been used, including "ZH-01" which reflected "resigned with notice." (Doc. 42 ¶ 22; Doc. 47-1 ¶ 22.)

Commonwealth agencies aside from the one from which the employee resigned had access to the electronic personnel file of an employee who resigned including access to the code affixed to the separation. (Doc. 42 ¶ 18; Doc. 47-1 ¶ 18.) According to Governor's Management Directive 580.23, individuals cannot be rehired into state employment unless, *inter alia*, they left their prior position "in good standing." (Doc. 42 ¶ 19; Doc. 47-1 ¶ 19.)

4

Ordinarily, Fleischauer decided what code to affix to a resigned employee's electronic personnel file. (Doc. 42 ¶ 24; Doc. 47-1 ¶ 24.) Plaintiff's separation was the only time that Fleischauer was instructed on what code to use in SAP. (Doc. 37 ¶ 12; Doc. 44 ¶ 12.) Fleischauer does not remember any other employees who had that code used upon their separation. (Doc. 37 ¶ 13; Doc. 44 ¶ 13.) As she was directed, Fleischauer put the code in the SAP. (Doc. 37 ¶ 14; Doc. 44 ¶ 14.) The code itself does not mention the settlement agreement. (Doc. 37 ¶ 16; Doc. 44 ¶ 16.) The settlement agreement is confidential, subject to certain exceptions. (Doc. 37 ¶ 17; Doc. 44 ¶ 17.)

The settlement agreement itself did not define what agencies were under the Governor's jurisdiction. (Doc. 37 ¶19 ; Doc. 44 ¶ 19.) Plaintiff believed the Office of Administration ("OA") website did not correctly list the entities under the Governor's jurisdiction.[3] (Doc. 37 ¶ 20; Doc. 44 ¶ 20.) The Liquor Control Board ("LCB") was listed as being under the Governor's control but it was not. (Doc. 37 ¶ 21; Doc. 44 ¶ 21.)

Plaintiff applied for numerous state and private sector jobs, and she had approximately ten interviews with state employers. (Doc. 37 ¶¶ 53-55; Doc. 44 ¶¶ 53-55.) She was not selected for any of the positions. (Doc. 37 ¶ 55; Doc. 44 ¶ 55.) State job interviews included those for two positions with the LCB, several positions with the PUC,

---

[3] Plaintiff notes that she relied on the Pennsylvania Manual to research which entitles were independent of the governor. (Doc. 44 ¶ 20.)

and at least two positions with the Board of Probation and Parole. (Doc. 37 ¶ 56; Doc. 44 ¶ 56.)

Fleischauer sent calls about Plaintiff to Harker, but Plaintiff believed Fleischauer could have handled the calls herself. (Doc. 37 ¶ 31; Doc. 44 ¶ 31.) Although Harker handled reference inquiries on behalf of the Department (Doc. 42 ¶ 29; Doc. 47-1 ¶ 29), Fleischauer testified that she knew that some state agencies saw the coding and raised questions about it (Doc. 42 ¶ 28; Doc. 47-1 ¶ 28). In handling a code-related inquiry, Harker would first ask the inquirer if the agency on whose behalf the inquiry was made was within the Governor's jurisdiction. (Doc. 42 ¶ 30; Doc. 47-1 ¶ 30.) If the inquirer told Harker the represented agency was outside the Governor's jurisdiction, Harker indicated in an email that he would advise the inquirer "I can make no comment relating to Ms. Leese's separation." (Doc. 42 ¶ 31; Doc. 47-1 ¶ 31.)

Plaintiff believes that having an attorney respond to anyone calling to ask about her sends up red flags and looks bad, even if the person is told "no comment." (Doc. 37 ¶ 36; Doc. 44 ¶ 36.) Plaintiff testified that the Department could have checked for her new employment after the fact or could have contacted individual departments in other agencies to see if she was applying for positions or if she had a job there. (Doc. 37 ¶ 30; Doc. 44 ¶ 30.)

LCB documents concerning consideration of Plaintiff for a position contain the notation "not allowed to consider . . . unusual code." (Doc. 42 ¶ 32; Doc. 47-1 ¶ 32.)

6

Pennsylvania Public Utilities Commission ("PUC") documents related to its consideration of Plaintiff for employment contain an email which stated she was "a strong candidate" and a subsequent notation which stated "Red Flags during OPF review. Not hiring." (Doc. 42 ¶¶ 33-34; Doc. 47-1 ¶¶ 33-34.)

Communications between Harker and the Pennsylvania State Employee Retirement System ("PSERS") pursuant to PSERS' inquiries about Plaintiff indicate that Harker provided information relevant to an entity under the governor's jurisdiction when, in fact, PSERS was not. (Doc. 42 ¶ 35; Doc. 37-1 ¶ 35.)

Harker perceived that there were several disciplinary issues with Plaintiff. (Doc. 37 ¶ 40; Doc. 44 ¶ 40.) Fleischauer testified that there were "some issues" with Plaintiff. (Doc. 37 ¶ 42; Doc. 44 ¶ 42.) Incidents include Plaintiff's arrest during a lunch hour.[4] (Doc. 37 ¶ 44; Doc. 44 ¶ 44.) Plaintiff protested the related one-day suspension she received. (Doc. 37 ¶ 45; Doc. 44 ¶ 45.) No official discipline was issued to Plaintiff as the result of a predisciplinary conference in April 2014. (Doc. 37 ¶ 51; Doc. 44 ¶ 51.) The one-day suspension was reversed as part of Plaintiff's settlement agreement. (Doc. 37 ¶ 52; Doc. 44 ¶ 52.)

When briefing the Department's former chief counsel, Harker informed him that Plaintiff had filed a sexual harassment complaint, she was a "problem employee," she "was

---

[4] Matters related to the reporting of this incident are disputed. (Doc. 37 ¶ 44; Doc. 44 ¶ 44.)

7

not a pleasant person to deal with," and prior counsel wanted to get rid of her "just as bad as we did." (Doc. 42 ¶¶ 37-38; Doc. 43 ¶¶ 47-48.)

## III. STANDARD OF REVIEW

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality, . . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should

8

be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." *Anderson,* 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of

9

witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

## IV. ANALYSIS

Plaintiff contends Defendant retaliated against her by using a code in her electronic personnel file which negatively impacted her employment prospects following her resignation from the Department of Insurance pursuant to a settlement agreement entered into after she complained of sexual harassment to the her employer and filed a PHRC complaint. (Doc. 1.) With the pending motion, Defendant asserts that Plaintiff cannot establish a prima facie case of retaliation for two reasons: 1) she cannot show that her protected activities were the "but-for" cause of the alleged adverse action (Doc. 38 at 6); and 2) she cannot show that "a reasonable employee would . . . have found the subject actions to be materially adverse and would not have been dissuaded from making or supporting a charge of discrimination" (*id.*). Plaintiff responds that she can satisfy both elements of the prima facie case. (Doc. 42 at 12-19.)

Section 704(a) of Title VII states:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

10

42 U.S.C. § 2000e-3(a). In *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S.

53 (2006), the Supreme Court stated that "Title VII's antiretaliation provision must be

construed to cover a broad range of employer conduct." *Thompson v. North American*

*Stainless, LP*, 562 U.S. 170, 173 (2011) (citing *Burlington*, 548 U.S. 53).

The framework within which the Court is to review a Title VII claim of retaliation is

concisely set out in *Carvalho-Grevious v. Delaware State University*, 851 F.3d 249 (2017):

> Title VII prohibits an employer from discriminating based on an employee's race, color, religion, sex, or national origin, 42 U.S.C. § 2000e–2(a), and from retaliating against an employee for complaining about, or reporting, discrimination or retaliation, *id.* § 2000e–3(a). . . .
>
> To state a prima facie case of retaliation, a plaintiff must show that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the participation in the protected activity and the adverse action. *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006). A plaintiff seeking to prove her case through indirect evidence . . . may do so by applying the familiar *McDonnell Douglas* burden-shifting framework. *Daniels* [*v. Sch. Dist. of Phila.*, 776 F.3d 181,198–99 (3d Cir. 2015)]. After establishing a prima facie case of retaliation, the burden shifts to the employer to provide a legitimate non-retaliatory reason for its conduct. *Moore*, 461 F.3d at 342. If it does so, the burden shifts back to the plaintiff "to convince the factfinder both that the employer's proffered explanation was false [that is, a pretext], and that retaliation was the real reason for the adverse employment action." *Id.* The onus is on the plaintiff to establish causation at two stages of the case: initially, to demonstrate a causal connection as part of the prima facie case, and at the final stage of the *McDonnell Douglas* framework to satisfy her ultimate burden of persuasion by proving pretext.

851 F.3d at 256-57. *Carvalho-Grevious* reiterated the well-established principle that

"'[t]he *prima facie* requirement for making a Title VII claim is not onerous and poses

a burden easily met." 851 F.3d 259 (internal quotations omitted) (citing *Texas Dep't of*

*Comty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 365 (3d Cir. 2008)).

For purposes of summary judgment, Defendant does not dispute that Plaintiff's prior charge was a protected activity. (Doc. 38 at 8.) As set out above, Defendant maintains that Plaintiff cannot satisfy the adverse action and causation elements of the her prima facie case.

## A. Adverse Action

Defendant asserts that Plaintiff did not provide evidence that she suffered any "material or tangible impact" based on Defendant's separation coding and, therefore, cannot show any adverse action. (Doc. 38 at 21.) Plaintiff responds that the "surreptitious coding and responses to inquiries caused her to be red-flagged by prospective Commonwealth employers." (Doc. 42 at 15.) The Court concludes that Plaintiff has put forth sufficient evidence to satisfy her prima facie burden of showing that she suffered an adverse employment action.

Title VII's "antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington*, 548 U.S. at 67. It is not limited to employer action that affects the terms and conditions of a claimant's employment. *Komis v. Sec'y of United States Dep't of Labor*, 918 F.3d 289, 293 (3d Cir. 2019). *Burlington* explained that "[a]n employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm *outside* the workplace." 548

12

U.S. at 63. The protections of the provision extend to post-employment retaliation. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 339 (1997). *Burlington* set out the required showing: "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal quotation and citations omitted).

The materiality requirement "is important to separate significant from trivial harms." *Id.* The Court adopted an objective standard, i.e., the reactions of a "reasonable" worker, because "[i]it avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings." *Id.* at 68-69. The Court "phrase[d] the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id.* at 69. Quoting its earlier decision in *Oncale v. Sundonwner Offshore Services, Inc.*, 523 U.S. 75 (1998), where it said that Title VII does not set forth "a general civility code for the American workplace," *id.* at 80, *Burlington* highlighted the need for a context-related analysis of the employer's action: "'The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Burlington*, 548 U.S. at 69 (quoting *Oncale,* 523 U.S. at 81–82). By way of example, the Court described the following situations:

A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children. . . . A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination. . . . Hence, a legal standard that speaks in general terms rather than specific prohibited acts is preferable, for an act that would be immaterial in some situations is material in others.

548 U.S. at 69 (internal citations and quotations omitted). Depending on the facts of the case, detriment to a former employee's future employment opportunities can give rise to an actionable claim, *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 201, 202 (3d Cir. 1994), as can failure to provide a reference, *E.E.O.C. v. L.B. Foster Co.*, 123 F.3d 746, 755-56 (3d Cir. 1997). Overall, *Burlington* concluded that "[b]y focusing on the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position, [the announced] standard will screen out trivial conduct while effectively capturing those acts that are likely to dissuade employees from complaining or assisting in complaints about discrimination." (*Id.* at 69-70.)

Defendant asserts that "[w]hile Plaintiff theorizes the potential impact the coding and Department's responses 'can raise concerns' and that it could affect her 'employment chances' (Doc. 1 ¶¶ 11-12), she provides no evidence that she suffered any material or tangible impact other than the fact that she believes it raised red flags and then she was not offered any positions by state agencies." (Doc. 38 at 21.) Defendant concludes that, other than this

14

generalized claim of a non-specific negative impact on her potential employment status, there is no evidence of record to support a finding of a "materially adverse" action such that a reasonable person in Plaintiff's position would have been dissuaded from filing a discrimination complaint as required by [*Burlington*], 548 U.S. at 71. Therefore, a reasonable employee would not find the coding and Department's responses were materially adverse because they did not subject her to a decrease in pay or benefits and she experienced no other changes with respect to her employment. Accordingly, Plaintiff has failed to meet the second prong of a prima facie case of retaliation based on the above actions, and summary judgment should be entered in favor of the Department.

(Doc. 38 at 22.)

Plaintiff avers that the code unilaterally added to her electronic personnel file "was enough to raise doubts among prospective, eligible state employers. . . . [A]t this stage she need not show that she actually lost jobs that she would otherwise have gotten. She only need prove the Department's actions might well have dissuaded an employee from reporting sexual harassment." (Doc. 42 at 17.) Referencing her LCB, PUC, and PSERS, applications as evidence of the negative impact of Defendant's coding choice, Plaintiff asserts that

Defendant must show that no reasonable jury could find that a state employee who knew she would have the ZH-07 code affixed to her personnel file and potential subsequent state employers be told "no comment" when asking about her would be dissuaded from filing a complaint of discrimination. Under these circumstances and in the context of this background, the Department simply cannot prevail on this argument.

(Doc. 42 at 17-18.)

The Court concludes that Defendant seeks more than is required to show an adverse action and Plaintiff has made the necessary showing given the circumstances of

15

this case.[5] No relevant authority suggests that an action can be materially adverse only if it results in "a decrease in pay or benefits and [the plaintiff] experienced no other changes with respect to her employment" (Doc. 38 at 22). Further, this standard is not applicable to Plaintiff's situation because she had resigned her position before the action alleged to be adverse occurred. Thus, Defendant's exclusive correlation of material adversity with benefits and changes in employment is inaccurate and unavailing.

Plaintiff does not merely make a "generalized claim of a non-specific negative impact on her potential employment status" (Doc. 38 at 21). Rather, she provides evidence that the code had a negative impact on her employment prospects with several potential employers including the LCB, PUC, and PSERS.[6] *See supra* pp. 5-6. The employers were interested enough in the possibility of employing Plaintiff to pursue her application and that interest came to a dead stop when they saw the code and/or inquired about it. *Id.* Plaintiff does not need to show, as Defendant would like, that she "was rated as the most successful

---

[5] Defendant does not refute Plaintiff's argument in its reply brief (Doc. 47).

[6] Defendant asserts that the Court should ignore certain evidence proffered by Plaintiff because it has not been authenticated or is inadmissible hearsay (Doc. 47 at 11-13.) Plaintiff responds that documents from other agencies can be authenticated and notations on documents are not inadmissible hearsay which should not be considered on summary judgment because the documents are not being offered for the truth of the matter asserted but rather to show that the existence of the notation makes the point that it "served to blackball her . . . irrespective of whether the notation was factually correct." (Doc. 53 at 5.) Alternatively, she argues that the completed forms are personnel records which fall within the hearsay exception of regularly conducted business activity. (*Id.* at 5-6 (citing Fed. R. Evid. 803(6)).) The Court concludes that Defendant has not shown that authentication is required at this stage of the proceedings and Plaintiff will not be able to authenticate the material at trial. The Court further concludes that consideration of referenced documents is not precluded under hearsay rules.

candidate out of all applicants and that she would definitely have been extended an offer for employment but for the Department's actions." (Doc. 38 at 21.) The evidentiary burden articulated by Defendant does not make sense in that a "red flag" would be raised when the potential employer reviewed the employee's electronic personnel file, an action which presumably would occur during the screening process and would prevent the flagged candidate from being "rated the most successful candidate" and "being extended an offer of employment" (*id.*).

Construing the antiretaliation provision to cover a broad range of employer conduct, as this Court must, *Burlington*, 548 U.S. at 67, if a reasonable employee knew, in the aftermath of filing a complaint, that the employer would unilaterally take an action that, though characterized as neutral, could curtail a prospective employer's interest in hiring him or her, that employee would likely be dissuaded from making or supporting a charge of discrimination. Also keeping in mind that "context matters," 548 U.S. at 69, and the employee's expectations are part of that context, *id.*, here Plaintiff entered into a settlement agreement in which her employer specifically agreed not to interfere with her attempts to seek employment with an independent state agency outside the Governor's jurisdiction (Doc. 37 ¶ 6; Doc. 44 ¶ 6; *see also* Doc. 43-2 at 2). Thus, Plaintiff or any reasonable employee in Plaintiff's position would have the reasonable expectation that Defendant would not interfere with future employment prospects by applying a separation code which had the effect it did with the LCB and PUC, or create the confusion it did with PSERS, *see supra* pp.

17

5-6. If a reasonable employee knew that supporting their charge of discrimination could have this outcome, i.e., even if you prevail to the point of settlement, you still lose because it will be more difficult to procure employment with a certain class of employers, the Court finds a reasonable employee would be dissuaded from embarking upon the process of raising or maintaining a Title VII claim of discrimination.

In sum, contrary to Defendant's implication that an action which raises "red flags" upon screening of a former employee's electronic personnel file cannot satisfy the requisite standard, viewing the facts in the light most favorable to the non-movant, a reasonable employee would have found "the material or tangible impact" (Doc. 38 at 1) of Defendant's post-settlement agreement unilateral coding decision and implementation sufficient to discourage him or her from filing a sexual harassment complaint. Therefore, Plaintiff satisfies the second element of the prima facie case.

## B.    Causation

Defendant contends Plaintiff cannot establish the prima facie causation element because her protected activities were not the but-for cause of the alleged adverse action. (Doc. 38 at 9.) Plaintiff responds that the causal connection is obvious: Defendant's admission that the coding would not have occurred in the absence of the protected activity by Plaintiff because the coding could not occur without the settlement agreement stemming from prior litigation satisfies the low bar for this prima facie case element. (Doc. 42 at 14.) Plaintiff also avers that, even if Defendant had not made this concession, its actions were

obviously linked to the PHRC case and settlement. The Court finds that a showing of but-for causation is not required at the prima facie stage and Defendant has not produced evidence which requires a conclusion that Plaintiff cannot show that her protected activity was the likely reason for the adverse action.

The causation element of the prima facie case was the central issue in *Carvalho-Grevious*. Stating that the Supreme Court made clear in *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338 (2012), that "'Title VII retaliation claims must be proved according to traditional principles of but-for causation,'" 851 F.3d at 258 (quoting *Nassar*, 570 U.S. at 360), *Carvalho-Grevious* turned to the question of "whether that burden differs at the prima facie stage of the case" and held that it did, *id.*

In analyzing the specific question of "what a plaintiff must bring as part of her prima facie case of retaliation to survive a motion for summary judgment in the wake of the *Nassar* decision, the Circuit Court explained that other circuits were split on the question, 851 F.3d at 257 (citing *Foster v. Univ. of Md.–E. Shore*, 787 F.3d 243, 251 n.10 (4th Cir. 2015) (collecting cases), and some had found "albeit without much in the way of explanation, that a plaintiff must prove but-for causation as part of the prima facie case of retaliation," 851 F.3d at 259 (citing *EEOC v. Ford Motor Co.*, 782 F.3d 753, 770 (6th Cir. 2015) (en banc); *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014)). The Third Circuit Court "decline[d] . . . to heighten the plaintiff's prima facie burden to meet her ultimate burden of

persuasion." *Id.* Rather, the Circuit Court agreed with the Fourth Circuit that to find

otherwise

> "would be tantamount to eliminating the *McDonnell Douglas* framework in
> retaliation cases.... If plaintiffs can prove but-for causation at the prima facie
> stage, they will necessarily be able to satisfy their ultimate burden of persuasion
> without proceeding through the pretext analysis. Had the *Nassar* Court
> intended to retire *McDonnell Douglas* and set aside 40 years of precedent, it
> would have spoken plainly and clearly to that effect."

851 F.3d at 259 (quoting *Foster*, 787 F.3d at 251). Thus, the Circuit Court concluded "at the

prima facie stage the plaintiff must produce evidence 'sufficient to raise the inference that

her protected activity was the *likely reason* for the adverse [employment] action.'" 851 F.3d

at 259 (quoting *Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)

(emphasis added in *Carvalho-Grevious*).

Defendant argues that

> [t]he record is replete with evidence that the coding was for a legitimate, non-
> retaliatory reason – which was the Department's attempt to comply with the
> parties' agreement that Plaintiff not seek employment with an agency under the
> Governor's jurisdiction. See Harker at 70:10-17; 75:9-23; 98:13-15. Therefore,
> there is absolutely no evidence that Plaintiff's prior complaint had any
> relationship whatsoever to the coding or Harker's statements made in response
> to agencies with inquiries about Plaintiff.

> . . . .

> . . . Fleischauer had consulted someone from the Office of
> Administration ("OA"), who had advised that the code is typically entered in
> situations such as Plaintiff's. Fleischauer at 35:16-36:11; Harker at 85:18-24.
> Brad Harker had consulted the Office of General Counsel about the situation.
> Fleischauer at 35:16- 36:11; Harker at 85:18-24. After consulting others for
> advice, they found the code to be the most innocuous and administratively
> simple way to monitor Plaintiff's compliance with the agreement while still

allowing the Department to remain compliant with the terms of the agreement. Harker at 70:10-17; 75:9-23.

Therefore, the coding is causally linked to the Department's strong desire to ensure compliance with the settlement agreement and is not linked to Plaintiff's protected activity. Obviously, the coding would not have occurred in the absence of the protected activity by Plaintiff (because the coding could not occur without the settlement agreement stemming from prior litigation), but there is no evidence demonstrating that the alleged wrongful actions were prompted upon only her protected activity and nothing else because the code was typically used in situations such as Plaintiff's. *See Nassar*, 133 S.Ct. at 2534. Excluding the fact that the coding occurred later in time than Plaintiff's protected activity, there is no evidence from which a reasonable jury could find the requisite causal link between her protected activity and the alleged adverse actions. Therefore, judgment should be entered in favor of the Department.

(Doc. 38 at 10-12.)

Plaintiff asserts that, even if Defendant's admission did not establish prima facie causation, "Defendant's actions took place immediately after the settlement agreement was signed and Plaintiff had departed, and the close temporal proximity also allows for a causal link to be inferred." (Doc. 42 at 14-15 (citing *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 308 (3d Cir. 2012) (citations omitted) ("[w]hen the temporal proximity between the protected activity and adverse action is unduly suggestive, this is sufficient standing alone to create an inference of causality and defeat summary judgment."). Plaintiff disputes Defendant's arguments that a prima facie causal link cannot be established because it had valid reasons to affix this code and because it was the best option available (Doc. 42 at 15 (citing Doc. 38 at 10-11)), stating that "Defendant's arguments . . . miss the mark because at the prima facie causal connection inquiry the question is *not* whether the adverse actions

were justified; it's simply whether the adverse actions were causally related to the protected activity" (*id.*).  Plaintiff notes that

> at the prima facie stage, when determining whether a plaintiff has shown a causal connection between the protected activity and adverse action, the employer's justification for implementing the adverse action is not what matters. The legitimacy of the employer's actions, i.e., the question of pretext, would be an issue for the third stage of the burden-shifting framework. Here, though Defendant has made no challenge beyond the prima facie case.

(Doc. 42 at 15 n.8.)

The Court finds that Plaintiff's evidentiary assessment is consistent with the Third Circuit's *Carvalho-Grevious* decision that but-for causation is properly considered at the third step of the *McDonnell Douglas* analysis.  Importantly *Carvalho-Grevious* held "at the prima facie stage the plaintiff must produce evidence sufficient to raise the inference that her protected activity was the *likely reason* for the adverse [employment] action" 851 F.3d at 259 (internal quotation and citation omitted).  Defendant clearly applied the wrong standard for showing causation at the prima facie stage of a Title VII retaliation claim in arguing it was entitled to summary judgment because Plaintiff could not establish the prima facie causation element requiring but-for causation.  (*See, e.g.*, Doc. 38 at 6.)  Not only did Defendant propose this as this requisite standard, but its argument shows it also applied the standard to the facts of the case with its conclusion that "there is no evidence demonstrating that the alleged wrongful actions were prompted upon *only* her protected activity and *nothing else* because the code was typically used in situations such as Plaintiff's." (*Id.* at 12 (emphasis added).)

22

Because Defendant relies on the incorrect standard for showing causation at the prima facie stage of a Title VII retaliation claim, it is not entitled to summary judgment based on its argument that Plaintiff has not shown but-for causation at this stage. (*See* Doc. 38 at 9-11.)

Although Defendant attempts to rehabilitate its error in its reply brief (Doc. 47 at 18), the effort is unavailing for several reasons. First, Defendant's expansion of its argument and altered basis for asserting its entitlement to summary judgment is not properly presented in a reply brief. *See, e.g., Dreyer v. Sheaffer*, Civ. A. No. 3:08-CV-1132, 2009 WL 917829, at *3 (M.D. Pa. Apr. 2, 2009) (listing cases); *see also Morgan v. Covington Township*, Civ. A. No. 3:CV-09-0651, 2013 WL 4538637, at *3 n.2 (based on *Dreyer*, defendant's arguments not considered because they were raised for the first time in reply brief).

Second, in attempting to transfer its prima facie argument to the second and third stages of the *McDonnell Douglas* framework, Defendant does not set out the relevant legal framework. Defendant states that

> even if Plaintiff can establish a prima facie case of retaliation, the undisputed evidence proves the Department had legitimate nondiscriminatory reasons for the actions taken and that her prior complaint was not the but-for cause of the actions taken.
>
> If the plaintiff succeeds in establishing the prima facie case of retaliation and the defendant can present legitimate nondiscriminatory reasons for its action, then the burden remains on the plaintiff to prove the reasons are pretext. Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997). In this case, the Department had legitimate non-discriminatory reasons for their actions, none of which were a pretext.

(Doc. 47 at 18.) Other than this brief conclusory statement, Defendant relies on causation arguments raised in its supporting brief. (*Compare* Doc. 38 at 10-20, *with* Doc. 47 at 19-29.)

Finally, even if the Court were to overlook the identified deficiencies and consider the merits of Defendant's arguments pursuant to the *McDonnell Douglas* inquiry, the Court would conclude that Defendant has not satisfied its burden of showing that no genuine issues of material fact exist and it is entitled to judgment as a matter of law.

Under *McDonnell Douglas*, the plaintiff bears the initial burden of showing a prima facie case of discrimination. 411 U.S. at 802. Once the plaintiff establishes a prima facie case, the burden shifts to the defendant "to identify a legitimate non-discriminatory reason for the adverse employment action." *Smith*, 589 F.3d at 689. "This burden is 'relatively light' and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason." *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013) (*citing Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006)). "At this stage, 'the defendant need not prove that the articulated reason actually motivated its conduct.'" *Id.* (*citing Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003)).

Once the defendant offers a legitimate non-discriminatory reason, "the burden of production [shifts] back to the plaintiff to provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for

discrimination." *Burton*, 707 F.3d at 426 (*citing Fuentes v. Perskie*, 32 F.3d 759, 764-65 (3d

Cir. 1994)). To survive summary judgment, "the plaintiff must point to some evidence . . .

from which a factfinder could reasonably either (1) disbelieve the employer's articulated

legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely

than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at

764.

Defendant asserts that it selected the coding because it was the best option

available and the responses to related inquires were truthful and accurate. (Doc. 47 at 19-

21.) The Court concludes that Defendant would satisfy its second-stage burden of

production because it has proffered legitimate non-discriminatory reasons for its decision to

use the code and its method of responding to related inquiries from prospective employers.

Regarding the third stage, Defendant proffers several arguments. First, Defendant

asserts the following:

> After consulting others for advice, the Department found the code to be the
> most innocuous and administratively simple way to monitor Plaintiff's
> compliance with the agreement while still allowing the Department to remain
> compliant with the terms of the agreement. Harker at 70:10-17; 75:9-23. The
> Department determined that using the code was the best option available and
> the only method to be able to ensure Plaintiff's compliance with the agreement.
> The possible alternatives were not feasible options. Harker at 71:1-72:1.
> Plaintiff has not presented any alternative methods that the Department could
> have used to serve this purpose.
>
> Therefore, the Department had a legitimate, non-retaliatory reason for
> selecting the coding – it was the only feasible option available that allowed the
> Department to monitor Plaintiff's compliance with the agreement while

remaining compliant with the agreement itself. And there is no evidence from which a reasonable jury could find pretext.

(Doc. 47 at 19-20.)

This argument is basically conclusory assertions which find Harker credible, an assessment this Court is precluded from making in determining whether summary judgment should be granted. As explained in *Guidotti v. Legal Helpers Debt Resolution*, LLC, 716 F.3d 764 (3d Cir. 2013),

> [u]nder Rule 56, ... a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The party asserting that there is a genuine dispute of material fact must support that assertion by "citing to particular parts of ... the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A). In evaluating the motion, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

716 F.3d at 772; *see also, Doebblers' Penn. Hybrids, Inc. v. Doebbler*, 442 F.3d 812, 820 (3d Cir. 2006) (stating that credibility determinations "are inappropriate to the legal conclusions necessary to a ruling on summary judgment.... A District Court should not weigh the evidence and determine the truth itself, but should instead determine whether there is a genuine issue for trial."); *J. F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d. 1254, 1531 (3d Cir. 1990) ("We are keenly aware that credibility determinations are not the function of the Judge; instead the non-movant's evidence must be credited at this stage.").

The foregoing analysis shows that issues of credibility which go to whether a reasonable jury could find Defendant's proffered reason for using the code a pretext for impermissible retaliation would preclude entry of summary judgment if the Court were to consider Defendant's arguments regarding pretext. The determinations to be made by the factfinder inform whether Plaintiff will ultimately be able to show the but-for causation necessary to succeed on her claim of retaliation. On the record before the Court, Defendant has not shown Plaintiff's inability to do so as a matter of law. Therefore, given all possible consideration, Defendant's motion is properly denied.

## V. CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment (Doc. 36) will be denied. An appropriate Order is filed simultaneously with this Memorandum Opinion.

Robert D. Mariani
United States District Judge